CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
HOWARD SHNEIDER (Bar No. 309492)
(E-Mail: howard_shneider@fd.org)
ANNICK JORDAN (Bar No. 38029[1])
(E-Mail: annick_jordan@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
Parker William White

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PARKER WILLIAM WHITE,<br><br>　　　　Defendant. | Case No. 5:23-CR-00040(A)-AB<br><br>**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND ARGUMENTS SEEKING JURY NULLIFICATION AND OTHER IMPROPER EVIDENCE AND ARGUMENTS.**<br><br>Hearing Date: August 14, 2024<br>Hearing Time: 10:00 AM<br>Location: Courtroom of the Hon. André Birotte Jr. |

---

[1] As a government attorney and a member of the Louisiana State Bar, Ms. Jordan has been admitted to practice before the United States District Court for the Central District of California.

Parker William White, by and through his counsel of record, Deputy Federal Public Defenders Howard Shneider and Annick Jordan, hereby files this opposition to the Government's Motion *In Limine* to Preclude Evidence and Arguments Seeking Jury Nullification and Other Improper Evidence and Arguments. (Dkt. No. 52).

This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: July 19, 2024        By  */s/ Annick Jordan*
                                ANNICK JORDAN
                                HOWARD SHNEIDER
                                Deputy Federal Public Defender
                                Attorneys for Parker William White

## I. INTRODUCTION

Parker William White is charged with production of child pornography, in violation of 18 U.S.C. §§ 2251(a), (e); receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(B), (b)(1); and possession of child pornography, in violation of 18 U.S.C. §§ 2251(a)(5)(B), (b)(2). (Dkt. No. 31).

Mr. White suffers from a range of diagnosed mental health issues and has experienced a great deal of firsthand trauma in his young life. The Government opposes the introduction of any evidence related to Mr. White's mental health, traumatic upbringing, or recent trauma. But exclusion of relevant evidence pre-trial would be premature. This Court should defer judgement on the admissibility of evidence of trauma, mental health history, and relevant mental state of Mr. White until the Government has rested their case at trial. To exclude this evidence now would be unduly prejudicial to Mr. White, and would violate the spirit (if not the letter) of Federal Rules of Evidence 401 and 403.

The defense takes no issue with the Government's understanding of the law surrounding nullification. We do not contend that Mr. White has a right to attempt a nullification defense, nor do we intend to present one. However, we disagree that any mental health evidence admitted would necessarily be relevant only to a nullification defense. Furthermore, the proper time to make that determination has not arrived. For these reasons, defense counsel opposes the Government's motion.

## II. ARGUMENT

**A.  This Court Should Defer It's Ruling on the Admissibility of Evidence and Arguments Regarding Mr. White's Background and Mental Condition Until the Close of the Government's Case.**

This Court should deny this motion *in limine* to bar admission of evidence regarding Mr. White's background and mental condition. In the alternative, the Court should defer its ruling until trial. Trial court's generally "exclude evidence on a motion *in limine* only when the evidence is *clearly inadmissible on all potential grounds*."

2

*United States v. Ozsusamlar*, 428 F.Supp. 2d 161, 164 (S.D.N.Y. 2006) (emphasis added). "The movant has the burden of establishing that the evidence is not admissible for any purpose. The trial judge may reserve judgment on a motion *in limine* until trial to ensure the motion is considered in the proper factual context." *United States v. Goodale*, 831 F. Supp. 2d 804, 808 (D. Vt. 2011).

> i. *Mr. White does not plan to mount a nullification defense.*

The Government argues that it would be improper to request that the jury return a verdict of not guilty even if it finds all the elements of the relevant offense proven beyond a reasonable doubt. The defense agrees. The defense further agrees that all evidence presented to the jury must be relevant to an element of the offense.

However, the Government also asserts that several broad swaths of evidence have no possible relevance to any of the elements of the offense ("The only purpose for such evidence and arguments would be to elicit sympathy from the jury to seek jury nullification.") (Dkt. No. 52 at 4.) Rather than asking the Court to prejudge the probative value and prejudicial impact of as-yet unseen evidence, the defense respectfully requests that the Court defer any rulings on specific evidence until trial.

> ii. *Mr. White should be allowed to challenge and contextualize the Government's use of the* Dost *factors with his own evidence and testimony.*

The defense expects that when the Government introduces online or phone communications at trial, the communications will be limited to those involving sexual content. While it is the Government's right to present that version of events to the jury, their decision to narrow the scope of the evidence they present to the communications of a sexual nature should not preclude Mr. White from presenting a fuller account of the relationships between him and the alleged victims.

Similarly, we expect that the Government will rely on the factors first outlined in *United States v. Dost* to prove the production count charged in count one. 636 F. Supp. 828 (S.D. Cal. 1986). The production of child pornography statute triggers a 15-year mandatory minimum prison sentence for "[a]ny person who . . . uses . . . any minor to

engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a), (e). The definition of "sexually explicit conduct" contains a detailed list of five categories of qualifying conduct. 18 U.S.C. § 2256(2)(A). While the first four categories "deal with specific conduct that is easy to identify and describe," including sexual intercourse, bestiality, and masturbation, the fifth category involves the more subjective "lascivious exhibition of the genitals or pubic area of any person." *United States v. Battershell*, 457 F.3d 1048, 1051 (9th Cir. 2006) (quoting 18 U.S.C. § 2256(2)(A)).

In 1986, a district court in the Southern District of California proposed a six-factor test for "lascivious exhibition of the genitals," as set forth in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd, 813 F.2d 1231 (9th Cir. 1987). Under *Dost*, the relevant factors include: (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

When the parties file their positions on jury instructions, the defense will argue that the *Dost* factors are not the appropriate framework for the production count, and that the Court should instead instruct the jury using the definition of lascivious exhibition of the genitals laid out in *United States v. Hillie*, 39 F.4th 674 (D.C. Cir. 2022). Nonetheless, the defense recognizes that courts in the Ninth Circuit rely upon the *Dost* factors. *See, e.g.*, *United States v. Boam*, 69 F.4th 601 (9th Cir. 2023); *United States v. Perkins*, 850 F.3d 1109, 1121 (9th Cir. 2017) ("The *Dost* factors "are neither exclusive nor conclusive," and courts may consider "any other factor that may be relevant in a particular case."). And we expect the government to present its case on the production

1  count with the *Dost* factors in mind. The production count involves one photo of E.V.G.,
2  in which she is standing naturally and is nude. Because the photo does not clearly meet
3  the definition of lasciviousness, the context surrounding the relationship between Mr.
4  White and E.V.G. may become important. And Courts regularly find context matters
5  when evaluating the *Dost* factors. *See, e.g.*, *United States v. Goodale*, 831 F. Supp. 2d
6  804, 809–10 (D. Vt. 2011) ("the question of lasciviousness is not decided by a bright-
7  line test. Instead, the fact finder must make a totality-of-the-circumstances inquiry that
8  can only be informed through the context of a trial . . . even a proper consideration of the
9  *Dost* factors requires more context than is available on the pre-trial record."). Mr. White
10 should be able to present that pertinent context at trial.

11      Moreover, the *Dost* factors have generated a number of disputes that have led
12 courts away from the statutory language of § 2256(2)(A). There are unresolved questions
13 about what the specific factors, and the sixth factor in particular, even mean. *See, e.g.*,
14 *United States v. Amirault*, 173 F.3d 28, 34 (1st Cir. 1999) (cataloging disagreement about
15 what the sixth *Dost* factor means). As one commentator observed, "the *Dost* test has
16 produced a profoundly incoherent body of case law." A. Adler, *Inverting the First*
17 *Amendment,* 149 U. Pa. L. Rev. 921, 953 (2001). Because of these unresolved
18 ambiguities, testimony or evidence may be necessary to clarify the actual relationship
19 and interactions between Mr. White and the alleged victims.

20      iii.   *Testimony from the Government's grooming expert will be necessarily*
21           *prejudicial to Mr. White and will necessitate evidence that provides further*
22           *context.*

23      The Government plans to call an expert in "grooming" behavior, Dan O'Donnell,
24 as part of their case in chief. *See* Ex. A, Expert Disclosure. In a motion *in limine* that will
25 be filed today, the defense will lay out its objections to O'Donnell's testimony. But if the
26 Court allows O'Donnell's testimony, Mr. White must be allowed to rebut that testimony
27 with evidence of his own. He should not be barred from presenting evidence that
28 contextualizes the interactions that he had with the alleged victims in this case. Barring

5

the presentation of evidence related to his background, mental health, and traumatic personal history would prevent a jury from considering relevant context that may change their perception of these allegedly improper interactions.

The Government has provided a list of possible areas of testimony for Agent O'Donnell, including: behavior and tactics used by child exploitation offenders, child exploitation offenders' use of the Internet and social media, the definition of grooming and stages in the process, grooming techniques, grooming a child online, and the impact grooming can have on the child and offender. Ex. A. Based on Agent O'Donnell's testimony in prior cases, he will likely paint Mr. White as a "predator," a characterization that he strenuously objects to.

In 2023, Agent O'Donnell testified in *United States v. Bindues*. As part of his testimony, he explained that he has spent the last 15 years exclusively working on cases involving the sexual exploitation of children. *See* Ex. B, Trial testimony of Daniel E. O'Donnell in *United States v. Bindues*, No. 22-CR-0466, 2023 WL 3230795 (D.N.M. May 3, 2023), at p. 5, 15-19. Agent O'Donnell outlined his work on "large online groups . . . consist[ing] of hundreds or thousands or even tens of thousands of subjects." *Id*. at p. 10, 2-5. And he explained his undercover work, "infiltrating groups" or conducting "online identity takeovers." *Id*. at p. 10, 21-24. None of these investigations map on to the charges Mr. White faces. With 15 years of experience dealing with serious sexual predators -- often working in coordination with each other -- it's not surprising that Agent O'Donnell tends towards suspicion. But Mr. White should be allowed to distinguish his situation from these coordinated efforts, and also from that of a significantly older baseball coach, judge, or priest accused of sexual "grooming" from a clear position of power. *Id*. at 12-13.

Nowhere in any of the available testimony given by Agent O'Donnell does any discussion of "trauma" appear. Nowhere in any of that testimony does Agent O'Donnell consider any aspect of the lives of the individuals charged in his cases other than what he views as evidence of their guilt. Agent O'Donnell's testimonial accounts (and, by

implication, his investigative reports) are singularly focused on framing the acts of individuals charged with sexual crimes as malicious and immoral. His simplistic, one-dimensional understanding of the motivations of those charged with sex offenses is clear throughout. On the idea that the accused may befriend parents of children they seek to groom, O'Donnell claims "they may be able to then exploit [friendships with adults] in order to gain further access [to their children] and keep that access over time." *Id*. at p. 30, 15-17. He also characterizes "feigning interest in [] books, movies, TV shows" as potential "grooming" behaviors, meant to "create [a] positive impression with a child" that could lead to predatory behavior later. *Id*. at p. 26, 5-6. Nowhere in his testimony does Agent O'Donnell mention anything about the social, sexual, or emotional history of any person charged in the cases he has worked on. In fact, Agent O'Donnell fails to even refer to these individuals as people at all -- they are reduced to nameless, anonymous "offenders." *Id*.

Again, it is not surprising that he makes these omissions -- he has a role to play in the cases in which he testifies. But it would be highly prejudicial to bar Mr. White from presenting contextual evidence necessary to counteract the overwhelmingly one-sided narrative brought forth by the Government and Agent O'Donnell. In order to rebut the clinical, context-free testimony anticipated from Agent O'Donnell, Mr. White should be allowed to present evidence that his relationships with the alleged victims in this case were different from the relationships Agent O'Donnell has manufactured.

### iv. *Mr. White must be allowed to rebut Agent O'Donnell's prejudicial testimony and clarify the proper application of the* Dost *factors*.

Without proffering evidence prematurely, some areas of testimony or evidence that would provide necessary context might relate to past trauma suffered by Mr. White, past trauma in the lives of the alleged victims, and the bond that Mr. White and the minors formed related to that trauma. This evidence might also include evidence of past sexual trauma suffered by Mr. White and the alleged victims from other perpetrators, which would be highly probative to this case. This testimony is necessary to distinguish Mr.

White's case from the other cases agents like Agent O'Donnell work on; and to provide fuller context for Mr. White's actions and inactions keeping in mind the context of this case, his history of mental health events, and his state of mind at the time of the alleged offenses.

On cross examination, Agent O'Donnell has admitted that it is possible that behavior that he might otherwise consider grooming could be benign -- that it "can be difficult to fully understand in certain cases." *Id*. at p. 58, 5-6. In fact, Agent O'Donnell admits that he would "have a lot of questions" about a case where an 18 year old was charged with grooming a 17 year old. *Id*. at p. 60, 10-11. In that same line of questioning, Agent O'Donnell identifies a number of factors that would help him determine whether that hypothetical situation (a relationship between two individuals of a similar age) was a benign dating relationship or a grooming one. His factors include cognitive development, a lack of dramatic difference in authority, life experience, and age. *Id*. at p. 61, 3-5. He also admits that, in his opinion, a minor might enter a voluntary relationship with an adult without a grooming relationship. According to Agent O'Donnell's own testimony, context matters when examining conduct by someone charged with sex offenses. In previous testimony he pointed repeatedly to "the totality of [the] circumstances." *Id*. at p. 61, 20-21. Many of the contextual factors that Agent O'Donnell mentioned in past testimony are the same factors the defense anticipates focusing on in its presentation of evidence.

The Government is likely to respond to this argument with a reminder that defense counsel will be able to cross-examine Agent O'Donnell. But in previous testimony Agent O'Donnell provided opinions on grooming in general without considering the actual facts of the case in which he was testifying.[2] He was often called upon as a "blind expert,"

---

[2] See, e.g., O'Donnell in *United States v. Bindues* at 52, where the judge notes in response to an objection from defense counsel, "Let's go away from [that hypothetical]. It's going to sound like he's reviewed these facts. And my understanding is he hasn't . . . if you start putting [up] those hypotheticals, I'm afraid we're getting him to comment on this case."

1  "testifying as to [his] general experience related to these types of offenders and the
2  different types of clusters of behaviors that we often see." Ex. C, Trial testimony of
3  Daniel E. O'Donnell in *United States v.* Rivera, No. 22-CR-1561 (D.N.M. July 6, 2023),
4  at p. 7, 10-13. Cross-examination of a "blind expert" witness that has no knowledge of
5  this case and no knowledge of Mr. White will not allow Mr. White to mount an adequate
6  defense. For this reason, the Court should allow Mr. White to refute the broad, over-
7  generalized, and pejorative assumptions that Agent O'Donnell is likely to make about
8  him with his own evidence about his relationships with the alleged victims in this case.
9  The jury will be free to make their own assessments about his character, the credibility
10 of Agent O'Donnell, and whether the Government has met their burden under the *Dost*
11 factors. But they should be permitted to make those assessments with full context -- not
12 in a vacuum, and not based solely on the unrefuted testimony of a blind expert.

**B.    This Court Should Allow Defense Counsel to Notice a Mental Health Expert.**

The Government relies on a truncated version of Federal Rule of Criminal Procedure 12.2(b) in making this motion. The full text of the rule reads that "[i]f a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt . . . the defendant must—within the time provided for filing a pretrial motion **or at any later time the Court sets**—notify an attorney for the Government in writing of this intention and file a copy of the notice with the clerk. **The Court may, for good cause, allow the defendant to file the notice late**." Fed. R. Crim. P. 12.2(b) (emphasis added).

At this point, the defense does not intend to call a mental health expert. But depending on the Court's ruling on the motion *in limine* to exclude the grooming expert, Mr. White reserves his right to call a mental health expert to rebut the grooming expert's testimony. Mr. White will more fully brief arguments on admitting mental health expert testimony if and when such arguments become necessary. For now, the

1  defense wishes to point to some additional law on Rule 12.2 so that the Court has a
2  fuller picture of the controlling standards.
3      Rule 12.2(d)(1) does not *require* the Court to exclude evidence from Mr. White
4  if the defense fails to give timely notice under Rule 12.2(b). Far from it. While the
5  Government cites two out-of-circuit cases in their brief in support of the argument that
6  Courts "routinely exclude mental condition expert testimony" based upon Rule 12.2
7  violations, it fails to cite important contrary law. (Dkt. No. 52 at 6).
8      In *Fendler v. Goldsmith*, the Ninth Circuit framed the issue of witness exclusion
9  as a balancing test, finding that "any possible prejudice to the prosecution's case was
10 not nearly substantial enough to overcome [defendant's] sixth amendment right to
11 present a defense." 728 F.2d 1181, 1189 (9th Cir. 1983). Quoting *Fendler*, the Supreme
12 Court instructed district Court judges to consider "the effectiveness of less severe
13 sanctions, the impact of preclusion on the evidence at trial and the outcome of the case,
14 the extent of prosecutorial surprise or prejudice, and whether the violation was willful."
15 *Taylor v. Illinois*, 484 U.S. 400, 415 n.19 (1988). Citing the importance of "the
16 fundamental character of the defendant's right to offer the testimony of witnesses in his
17 favor," the Court noted that "potential prejudice to the truth-determining function of the
18 trial process must also weigh in the balance." *Id*. at 414.
19     If the Court admits O'Donnell's testimony and the defense concludes a mental
20 health expert is needed to counter O'Donnell's testimony, the defense will file a motion
21 at that time further addressing the Rule 12.2 issues raised by the government.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ////
28 ///

10

## III. CONCLUSION

For the foregoing reasons, defense counsel respectfully requests that this Court deny the Government's motion *in limine* to bar admission of evidence regarding Mr. White's background and mental condition. In the alternative, the Court should defer it's ruling until trial.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: July 19, 2024        By  /s/ *Annick Jordan*
ANNICK JORDAN
HOWARD SHNEIDER
Deputy Federal Public Defender
Attorneys for Parker William White

11